**WO**
NN

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Gail Phila Slater,  ) | No. CV 07-429-PHX-EHC |
| Plaintiff,  ) | **ORDER** |
| vs.  ) | |
| Samuel E. Stith and Sandra J. Stith, ) both individually and d/b/a Sam Stith ) Enterprises, Inc., Family Preservation ) Center, Inc., and Pro-Athletes ) Investments, Inc., ) | |
| Defendants.  ) | |

Plaintiff Slater filed a Complaint on February 22, 2007, alleging: Violation of Deceptive Practices Act; Breach of Contract; Conversion; Breach of Fiduciary Duty; Unjust Enrichment; and Violation of Racketeer Influenced and Corrupt Organizations ("RICO") Act (Dkt. 1). Plaintiff filed a *First Amended Complaint and Demand for Trial by Jury* ("First Amended Complaint") (Dkt. 4) on February 27, 2007, alleging the same six claims.[1]

Defendants filed a *Motion to Dismiss First Amended Complaint* ("Motion to Dismiss") (Dkt. 8) on March 26, 2007, pursuant to Rule 12(b)(6) of the Federal Rules

---

[1] "Plaintiff filed First Amended Complaint to correct minor typos and grammar errors in the original Complaint." (Dkt. 9, p. 2, note 1).

of Civil Procedure, contending that all of the claims are barred by the applicable statutes of limitations.[2] Plaintiff filed a *Response to Defendant Stiths' Motion to Dismiss and Plaintiff's Motion for Leave of Court to File Second Amended Complaint* ("Second Motion to Amend") (Dkt. 10).

Defendants filed a *Reply in Support of Motion to Dismiss First Amended Complaint and Response to Plaintiff's Motion for Leave of Court to File Second Amended Complaint* (Dkts. 13 and 14). Plaintiff, in turn, filed a *Reply in Support of Plaintiff's Motion for Leave of Court to File Second Amended Complaint* (Dkt. 15).

Once a party has amended their pleading as a matter of course, Rule 15(a)(2) of the Federal Rules of Civil Procedure allows a court to grant leave for the filing of subsequent amendments; it provides the Court "should freely give leave when justice so requires." In the Second Motion to Amend, Plaintiff "addressed some of the well-taken points raised by Defendants in their Motion to Dismiss" by withdrawing three claims: Violation of Deceptive Practices Act; Conversion; and Violation of the RICO Act. (Dkt. 15, p. 4). She also added a claim of Fraud. The Court will grant leave for Plaintiff to file her Second Motion to Amend.

**I. MOTION TO DISMISS**

The remaining three claims in the First Amended Complaint are: Breach of Contract, Breach of Fiduciary Duty, and Unjust Enrichment.[3]

Plaintiff alleges Defendant Stith solicited Plaintiff to invest in housing rehabilitation projects, purportedly to foster home ownership in low-income neighborhoods. Plaintiff alleges she invested $191,160 over a three-year period, from October 1997 to August 2000; in return, Plaintiff would receive periodic income payments generated from the investment properties. If a property was sold, a lump-

---

[2] The parties agree that New York law controls. (Dkt. 9, pp. 7-8; Dkt. 8, pp. 4-5).

[3] These three claims are in the Second Amended Complaint, with the claim of Fraud.

sum payment would be received, depending upon the amount of profit the sale generated. (Dkt. 4).

On March 2, 2001, Stith pleaded guilty to one count of mortgage fraud in the United States District Court, Eastern District of New York. (Dkt. 4, Exh. 3).  In a January 2002 letter from Stith to Plaintiff, he lists her various investments totaling $191,160, and funds of at least $50,000 owed to her. (Dkt. 4, Exh. 1).  Stith advises Slater in a handwritten letter in February 2002 that her investment went towards the purchase of real estate properties, and that she would be receiving payments towards the balance owed to her, as well as a sales profit of at least $35,000. (Dkt. 4, Exh. 2).  On March 11, 2002, Stith wrote to Plaintiff that all of her real estate investments were "in contract to sell" but closing dates had not yet been set. (Dkt. 4, Exh. 2).

On May 28, 2004, Stith was sentenced to three years probation and restitution in excess of $11 million.  Plaintiff asserts she was not aware of his involvement in the fraudulent schemes and his conviction until June of 2004.[4]  With the exception of some "sporadic payments," Plaintiff claims she has not received any periodic income payments or sales profits from these investments.

**A.  Standard of Review**

A motion to dismiss pursuant to Rule 12(b)(6) tests the legal sufficiency of a claim. Navarro v. Block, 250 F.3d 729, 732 (9th Cir. 2001).  "A claim may be dismissed only if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Id. (quotation omitted).  In deciding a motion to dismiss, the court should accept all material allegations of the complaint as true, as well as all reasonable inferences that can be drawn from them. Id. (citing Cahill v. Liberty Mut. Ins. Co., 80 F.3d 336, 338 (9th Cir. 1996)).  A court

---

[4] Plaintiff's Second Amended Complaint alleges she did not discover these facts until June of 2004.

should only dismiss a claim where there is no cognizable legal theory or an absence of sufficient facts alleged to support a cognizable legal theory. Id. (citing Balistreri v. Pacifica Police Dept., 901 F.2d 696, 699 (9th Cir.1988)).

### B. Breach of Contract

Defendants argue that the six-year statute of limitations begins to run when the plaintiff possesses a legal right to demand payment. (Dkt. 8, p. 6). They claim that in the absence of a "definite repayment date," Plaintiff's cause of action accrued when the contract was created. (Dkt. 13, p. 6). Defendants cite Lynford v. Williams, 34 A.D.3d 761, 762, 826 N.Y.S.2d 335 (2006), a case that involved payment of a "demand promissory note." Defendants, however, did not execute a demand promissory note in favor of Plaintiff; their agreement was premised on Stith's obligation to manage Plaintiff's investments in real estate development projects.

Defendants rely on another case involving a stipulated repurchase agreement in which one of several parties paid a disproportionately greater share of the repurchase price; "the excess money it paid, in effect, became a loan," which "did not provide for a repayment schedule, and thus was payable on demand." Cognetta v. Valencia Developers, Inc., 8 A.D.3d 318, 778 N.Y.S.2d 80 (2004).

Plaintiff responds that the parties had agreed payments would be due to her as her investments generated income or produced sales profits. It is not reasonable for Defendants to insist that Plaintiff's repayments were due and payable when she transferred her funds to Stith for investment. "'[T]he statute of limitations begins to run in contract actions from the time of the breach . . . '" TIG Ins. Co. V. Newmont Min. Corp., 413 F.Supp.2d 273, 281 (S.D.N.Y.2005) (quoting Albany Specialties v. Shenendehowa Cent. Sch. Dist., 307 A.D.2d 514, 763 N.Y.S.2d 128 (2003)). Defendants arguably could not predict exactly when Slater's investments would generate income nor when they would sell the properties in which her monies were invested. An agreement that Plaintiff would be repaid upon the generation of income

- 4 -

1 or proceeds from sales is specific enough to determine when this type of contract would be in breach.

Defendants also contend that Plaintiff possessed sufficient knowledge of a potential claim such that she was obligated to inquire into the status of her investments within the statute of limitations period.[5] (Dkt. 8, p. 6). Defendants point to Stith's "highly publicized investigation, prosecution and conviction" as evidence that "Plaintiff, and any reasonable person, should have known of the events no later than 2000." (Dkt. 8, pp. 2, 9). Nonetheless, Plaintiff alleges she did not become aware of these events until June 2004.

Even if the statute of limitations began to run when the contract was made, Plaintiff points to the January, February, and March 2002 letters Stith wrote to her as evidence to restart the statute of limitations, since "the written acknowledgment of a debt and a promise to pay starts the Statute of Limitations to run anew." Fleet Nat'l Bank v. Laquidara Inc., 290 A.D.2d 930, 931, 736 N.Y.S.2d 813, 814 (2002) (citations omitted). "To constitute an acknowledgment of a debt, a writing must recognize an existing debt and contain nothing inconsistent with an intention on the part of the debtor to pay it." Knoll v. Datek Sec. Corp., 2 A.D.3d 594, 594, 769 N.Y.S.2d 581, 582 (N.Y.2003) (citation omitted). "[T]he critical determination is whether the acknowledgment imports an intention to pay." Id. (citation omitted). Construing the complaint in the light most favorable to Plaintiff, Stith arguably conveyed to Plaintiff an acknowledgment of the contract and his intent to pay her under the terms of the contract.

Furthermore, "[t]he doctrine of equitable estoppel applies where it would be unjust to allow a defendant to assert a statute of limitations defense." Zumpano v. Quinn, 6 N.Y.3d 666, 673, 816 N.Y.S.2d 703, 706 (N.Y.,2006). "'Our courts have

---

[5] Plaintiff's alleged first payment was on October 17, 1997, and the last was on August 1, 2000; Defendants assert that Plaintiff should have filed suit by "October 17, 2003, but no later than August 1, 2006." (Dkt. 8, p. 6).

- 5 -

1 long had the power, both at law and equity, to bar the assertion of the affirmative
2 defense of the Statute of Limitations where it is the defendant's affirmative
3 wrongdoing . . .which produced the long delay between the accrual of the cause of
4 action and the institution of the legal proceeding.'" Zumpano, 6 N.Y.3d at 673, 816
5 N.Y.S.2d at 706 (quoting General Stencils v. Chiappa, 18 N.Y.2d 125, 128, 272
6 N.Y.S.2d 337, 219 N.E.2d 169 (1966)). See Farkas v. Farkas, 168 F.3d 638, 641-42
7 (2nd Cir.1999) (finding claim of equitable estoppel, in response to statute of
8 limitations defense, can be based on acts of concealment).

9 However, "the plaintiff must demonstrate reasonable reliance on the
10 defendant's misrepresentations." Zumpano at 6 N.Y.3d at 674, 816 N.Y.S.2d at 706
11 (citing Simcuski v. Saeli, 44 N.Y.2d 442, 449, 406 N.Y.S.2d 259, 377 N.E.2d 713
12 (1978)).  Plaintiff alleges that Defendants did not advise her that Stith was under
13 criminal investigation for fraudulent real estate schemes nor that he eventually
14 pleaded guilty to mortgage fraud.  Again construing the complaint in the light most
15 favorable to Plaintiff, she was not aware of Stith's criminal activity and reasonably
16 relied on his letters telling her that monies from a balance owed and from impending
17 property sales were forthcoming.

18 "Under New York law, an unjust enrichment claim accrues upon occurrence
19 of the wrongful act giving rise to the duty of restitution." Plitman v. Leibowitz, 990
20 F.Supp. 336, 337 (S.D.N.Y.1998) (citing Rosner v. Codata Corp., 917 S.Supp. 1009,
21 1021 (S.D.N.Y.1996)). It, too, is subject to a six-year limitations period. Plitman, 990
22 F.Supp. at 337.  Defendants contend that the Plaintiff's claim accrued "when Plaintiff
23 made the investments." (Dkt. 8, p. 8).  Arguably, the wrongful conduct occurred
24 when Defendants failed to pay the profits from Slater's investments, which would
25 necessarily occur after the investments were made.

26 "Under New York law, a claim for damages based on breach of fiduciary duty
27 has a three-year statute of limitations." Reznor v. J. Artist Mgmt., Inc., 365 F.Supp.2d
28 565, 575 (S.D.N.Y.2005).  Defendants argue this limitations period bars Plaintiff from

1 a breach of fiduciary duty claim.  However, "the case law in New York clearly holds 2 that a cause of action for breach of fiduciary duty based on allegations of actual 3 fraud is subject to a six-year limitations period." Kaufman v. Cohen, 307 A.D.2d 113, 4 119, 760 N.Y.S.2d 157 (N.Y.App.Div.2003) (citations omitted).  The timeliness of the 5 breach of fiduciary duty claim "turns on the viability of plaintiff's fraud cause of 6 action." Kaufman, 307 A.D.2d at 119.

7 To state a cause of action for fraud, Plaintiff must allege that Stith knowingly 8 made a false representation, or concealed a material fact when there was a duty to 9 disclose, and that Slater justifiably relied on the falsity of the representation, or the 10 act of concealment, which resulted in injury to Slater.  See Kaufman, 307 at 119-20. 11 Construing the complaint in the light most favorable to Plaintiff, she has a viable 12 fraud cause of action. The statute of limitations for Plaintiff's breach of fiduciary duty 13 is six years.

14 Given Plaintiff's allegations that Stith's letters, the last of which was sent in 15 March 2002,  reaffirmed their contract, and the Court's duty to view all material 16 allegations as true, Slater's claims accrued in March of 2002.  Plaintiff filed this 17 action on February 22, 2007, well within the six-year limitations period.

18 Accordingly,

19 **IT IS ORDERED** that Plaintiff's Second Motion to Amend (Dkt. 10) is **granted.**

20 **IT IS FURTHER ORDERED** that Defendants' Motion to Dismiss (Dkt. 8) is 21 **denied.**

22 DATED this 25th day of March, 2008.

Earl H. Carroll
United States District Judge